UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VICTOR BOTNARI, *et al.*,

    *Plaintiffs*,

v.

MERRICK B. GARLAND, *et al.*,

    *Defendants*.

Civil Action No. 24-599 (LLA)

**MEMORANDUM OPINION**

    Victor Botnari and Mariia Trofimova brought this mandamus action against three government officials—U.S. Attorney General Merrick Garland, Secretary of Homeland Security Alejandro Mayorkas, and the Acting Director of the Humanitarian, Adjustment, Removing Conditions and Travel Documents ("HART") Service Center, Tracey Parsons (collectively, "Defendants")—seeking to compel a decision on Ms. Trofimova's Refugee Relative Petition (Form I-730) for her husband, Mr. Botnari. Defendants seek to have this case transferred to the District of Nevada under 28 U.S.C. § 1404(a). ECF No. 12. Additionally, Defendants move to dismiss the case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and for failure to state a claim under Rule 12(b)(6). *Id.* For the reasons explained below, the court will grant Defendants' motion in part and transfer the case to the District of Nevada under Section 1404(a).

    I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    The court takes the allegations in Plaintiffs' complaint as true for the purposes of deciding the pending motion. *Louis v. Hagel*, 177 F. Supp. 3d 401, 403 (D.D.C. 2016). The Form I-730 allows refugees who were granted asylum within the past two years to request that their immediate

family members, including spouses, join them in the United States. *See* U.S. Citizenship & Immigr. Servs., *I-730, Refugee/Asylee Relative Petition*.[1] The Department of Homeland Security has assigned the task of adjudicating refugee petitions to the United States Citizenship and Immigration Services ("USCIS"). *See id.*; 8 C.F.R. § 207.7. After an asylee submits a Form I-730 for her family member to the USCIS Texas Service Center, *see* U.S. Citizenship & Immigr. Servs., *I-730, Refugee/Asylee Relative Petition*, the form is processed by the HART Service Center.

Ms. Trofimova was granted asylee status in July 2023. ECF No. 1 ¶¶ 10, 24. The following month, she filed a Form I-730 petition seeking refugee status for Mr. Botnari under 8 U.S.C. § 1157(c)(2) and 8 C.F.R. § 207.7(a). ECF No. 1 ¶¶ 16, 24. While both Plaintiffs reside in Las Vegas, Nevada, *id.* ¶ 2, they filed the petition with the Texas USCIS Service Center per the agency's instructions. ECF No. 17, at 3; U.S. Citizenship & Immigr. Servs., *I-730, Refugee/Asylee Relative Petition*. After the Form I-730 had been pending for close to six months, Ms. Trofimova and Mr. Botnari filed this complaint for declaratory, injunctive, and mandamus relief seeking to compel Defendants to complete the adjudication. ECF No. 1 ¶¶ 4, 8. They allege that the delay in processing Mr. Botnari's petition has had a "serious impact on family planning" because Mr. Botnari has an unexecuted order of removal and thus is at risk of deportation before his Form I-730 petition gets adjudicated. *Id.* ¶¶ 2-3. They explain that they have communicated this issue to the USCIS and requested expedited processing, but the petition remains pending. *Id.* ¶¶ 3-4.

Defendants moved to transfer the case from this court to the U.S. District Court for the District of Nevada under 28 U.S.C. § 1404(a), or—in the alternative—for dismissal due to

---

[1] *Available at* https://perma.cc/2EC6-YP86.

improper venue.[2]  ECF No. 12.  The parties disagree on where the petition is currently awaiting adjudication.  Plaintiffs allege that it is pending at the USCIS's virtual HART Service Center, ECF No. 17, at 2, which is a "hybrid service center, with virtual adjudication capabilities and coordination with existing services centers" that has been responsible for processing and adjudicating Form I-730 petitions since 2023, ECF No. 1 ¶ 19; *see* U.S. Citizenship & Immigr. Servs., *USCIS Opens the Humanitarian, Adjustment, Removing Conditions and Travel Documents (HART) Service Center*.[3]  Defendants contend that the petition is pending at the USCIS's Las Vegas field office.  ECF No. 12, at 1.  Of the three defendants, two—Attorney General Garland and Secretary Mayorkas—reside, "for official capacity purposes," in this district.  ECF No. 1 ¶¶ 12-13.  The complaint does not include an address for the third defendant, Ms. Parsons, *id.* ¶ 14, but the USCIS is headquartered in Camp Springs, Maryland, ECF No. 12, at 2.

## II.     LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), the court may transfer a case from one proper venue to another appropriate venue if it serves "the convenience of parties and witnesses" and is "in the interest of justice."[4]  This is an "individualized, case-by-case consideration," comprised of two steps.  *Stewart*

---

[2] While Defendants style their motion as a motion to transfer *and* dismiss the case, they acknowledge that, "were the Court to transfer this action under Section 1404, the Court need not consider [the] motion to dismiss."  ECF No. 12, at 10.

[3] *Available at* https://perma.cc/ZC6V-3K3E.

[4] In contrast, 28 U.S.C. § 1406(a) governs transfer or dismissal when the initial venue is improper. *See Liu v. Mayorkas*, ___ F. Supp. 3d ___, No. 23-CV-2495, 2024 WL 3010847, at *1-2 (D.D.C. June 14, 2024).  Here, venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A) because Attorney General Garland and Secretary Mayorkas reside in the District of Columbia.  *See Lamont v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978) (explaining that "what controls is the official residence of the federal defendant where the official duties are performed and not the personal residence of an individual who is a defendant").  Defendants contest whether Plaintiffs have adequately alleged a connection between Attorney General Garland and Secretary Mayorkas

*Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

First, the transferor court must determine that the action "[could] have been brought" in the transferee district or that the parties consent to litigating there. 28 U.S.C. § 1404(a). Second, the court must decide whether "considerations of convenience and the interest of justice weigh in favor of transfer to that district." *Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n*, 975 F. Supp. 2d 57, 59 (D.D.C. 2013). In making this determination, the court "weigh[s] several private- and public-interest factors." *Id.* at 59-60. The private-interest factors include: "(1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the location where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) ease of access to sources of proof." *Id.* at 60. The public-interest factors include: "(1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home." *Id.* (quoting *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006)). "If the balance of private and public interests favor[s] a transfer of venue, then a court may order a transfer." *Id.* (quoting *Sheffer v. Novartis Pharms. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012)).

### III.   DISCUSSION

In their opposition, Plaintiffs only contest whether the court should dismiss the action for improper venue. By failing to address Defendants' argument for a transfer under Section 1404(a),

---

and the delays with their petitions, ECF No. 12, at 10-11, but "[i]n determining whether venue is proper, courts must accept the plaintiff's well-pled factual allegations as true, resolve any factual conflicts in the plaintiff's favor, and draw all reasonable inferences in favor of the plaintiff," *Roland v. Branch Banking & Trust Corp.*, 149 F. Supp. 3d 61, 67 (D.D.C. 2015). If Defendants wish to dismiss Attorney General Garland or Secretary Mayorkas for failure to state a claim under Rule 12(b)(6), they may renew that argument after the case is transferred.

*see* ECF No. 17, at 3-5, Plaintiffs have conceded that venue would be proper in the District of Nevada, *see* ECF No. 18, at 2; *Mullen v. Bureau of Prisons*, 843 F. Supp. 2d 112, 115 (D.D.C. 2012) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded." (alteration in original) (quoting *Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010))). Nevertheless, the court will consider the facts and determine whether transferring this case is in the interest of justice. *Stewart Org.*, 487 U.S. at 29 ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" (quoting *Van Dusen*, 376 U.S. at 622)).

On the first step, the court concludes that the suit could have originally been brought in the District of Nevada. Venue is proper in suits against officers or agencies of the United States "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The suit could have been brought in the District of Nevada under subsection (C) because both Plaintiffs reside in Nevada and the case does not involve real property. *See* ECF No. 1 ¶ 2.

On the second step, the court concludes that both the private- and public-interest factors weigh in favor of transferring this case to the District of Nevada. *See Blackhawk Consulting, LLC*, 975 F. Supp. 2d at 59. The court begins with the private-interest factors. As to Plaintiffs' choice of forum, Mr. Botnari and Ms. Trofimova initially brought their case in this district, but they did not oppose Defendants' request for a transfer. *See generally* ECF No. 17. The first factor thus favors a transfer. As evidenced by their motion to transfer, ECF No. 12, Defendants prefer the

District of Nevada. That is also Plaintiffs' home district, and "[t]ransfer is favored when defendants' preferred forum is also the plaintiff's home forum." *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 332 (D.D.C. 2020). The third private-interest factor—where the claim arose—is neutral. "[I]n APA cases like this one, the underlying claim typically arises 'where the decisionmaking process occurred.'" *McAfee, LLC v. U.S. Citizenship & Immigr. Servs.*, No. 19-CV-2981, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019) (quoting *Gyau v. Sessions*, No. 18-CV-407, 2018 WL 4964502, at *2 (D.D.C. Oct. 15, 2018)). Plaintiffs' petition is being handled either in the USCIS's Las Vegas, Nevada office or virtually by the HART Service Center, neither of which are in this district. ECF No. 17, at 2; ECF No. 12, at 1. The remaining factors favor a transfer. As to the convenience of the parties, Plaintiffs "cannot reasonably claim to be inconvenienced by litigating in [their] home forum," *Wolfram Alpha LLC*, 490 F. Supp. 3d at 333 (quoting *Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 270 (D.D.C. 2018)), and Defendants prefer to litigate there. Finally, Plaintiffs will likely be key witnesses and rely on personal records to develop their claim, making their home district a better venue.

The public-interest factors likewise weigh in favor of a transfer or are neutral. First, there is no reason to suspect that any federal district court is unfamiliar with federal immigration law. *See Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (explaining that where "both courts are competent to interpret the federal statutes involved[,] . . . there is no reason to transfer or not transfer based on this factor"). Next, there can be no dispute that each district faces congested dockets, making this factor neutral. Finally, because Plaintiffs will feel the "potential impacts" of the USCIS's decision most prominently in their home district of Nevada, the local interest factor weighs in favor of transfer. *See Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 58 (D.D.C. 2012); *see also S. Utah Wilderness All. v. Norton*, 315 F.

Supp. 2d 82, 88-89 (D.D.C. 2004) (noting that a forum had a clear interest in resolving disputes where the alleged consequences of an action would be most particularly felt).

After balancing the relevant factors as set forth above, the court concludes that transferring this case to the District of Nevada promotes the convenience of the parties and witnesses and is in the interest of justice. *See* 28 U.S.C. § 1404(a). The court will therefore transfer this action to the District of Nevada.

## IV.     CONCLUSION

For the foregoing reasons, the court will transfer the case to the District of Nevada but otherwise deny Defendants' motion. Additionally, the court will direct Defendants to respond to the complaint no later than twenty-one days after the case is docketed in the District of Nevada. An Order consistent with this Memorandum Opinion will issue contemporaneously.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   November 29, 2024